UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDPRO HEALTH PROVIDERS, LLC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THOMAS E. PRICE, Secretary, U.S. ) <br> Department of Health and Human Services; ) <br> ADVANCEMED CORPORATION, and ) <br> NCI INFORMATION SYSTEMS, INC., ) <br> d/b/a ADVANCEMED, ) <br> ) <br> Defendants. ) | No. 17 C 1568 <br><br> Judge Kennelly |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF MOTION TO DISMISS**

This matter involves a temporary suspension of Medicare reimbursements taken against plaintiff MedPro Health Providers, LLC ("MedPro"), a home health agency, based on a concern that MedPro owes money to the Medicare program. Dkt. 1, Att. 1. Because no subject matter jurisdiction exists to challenge this Medicare regulatory action, this court should dismiss plaintiff's complaint against the Secretary of Health and Human Services ("Secretary"), his Medicare program integrity contractor, AdvanceMed Corporation ("AdvanceMed"), and AdvanceMed's parent corporation, NCI Information Systems, Inc. ("NCI").

Before any claim arising under the Medicare Act can be filed in federal court, it must first be channeled through four levels of administrative review, which has not occurred. As discussed below, the Secretary has lifted the temporary payment suspension that is at the heart of MedPro's complaint and has determined that MedPro owes almost $7 million to the Medicare program. MedPro can pursue administrative appeals regarding the overpayment determination and can raise its challenges to the payment suspension process at that time. Because MedPro has failed to let

the administrative process run its course, there is neither a final decision by the Secretary nor a fully developed administrative record for this court to review. Accordingly, there is no subject matter jurisdiction.

Additionally, MedPro fails to identify a nondiscretionary duty owed to it, which is a requirement for mandamus relief. 42 C.F.R. § 405.375. MedPro similarly fails to satisfy basic pleading requirements for its fraud claim. Fed. R. Civ. P. 12(b)(6), 9(b). Dismissal of the complaint is proper for any and all of these reasons.[1]

## Statutory and Regulatory Background

In 1965, Congress created Medicare, the federally funded and administered health insurance program for certain disabled persons under age 65 and for individuals who are age 65 and over. *See* Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 *et seq.* (commonly referred to as the Medicare Act). Congress gave the Secretary of Health and Human Services broad authority to regulate Medicare reimbursement and to establish methods to combat fraud, waste, and abuse. 42 U.S.C. §§ 1395hh(a)(1), 1395ddd. Specifically, Congress requires the Secretary to enter into contracts with private entities to promote the integrity of the Medicare program. 42 U.S.C. § 1395ddd(a). The Secretary has delegated his responsibility for

---

[1] The allegations against NCI should also be dismissed. Although the complaint does not distinguish between AdvanceMed and NCI, and attributes all alleged acts to both entities by referring to them collectively as "AdvanceMed," NCI is not a Medicare contractor and is merely AdvanceMed's parent corporation. *See*, *e.g.*, Medical Life Sciences News, http://www.news-medical.net/news/20110404/NCI-acquires-AdvanceMed.aspx (Apr. 4, 2011), discussing NCI's acquisition of AdvanceMed. Thus, NCI is not a proper defendant. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (Internal quotation and citations omitted).

administering the Medicare program to the Administrator of the Centers for Medicare & Medicaid Services ("CMS"), an agency within the Department of Health and Human Services ("HHS").

Medicare consists of four components: Parts A, B, C and D. 42 U.S.C. §§ 1395c, 1395j, 1395w-21, 1395w-101. This case concerns Part A, which applies to home health care services. 42 U.S.C. § 1395c. Medicare covers only home health services for Medicare beneficiaries who are confined to their homes, under the care of a physician, and in need of skilled services. 42 C.F.R. § 409.42. In order for Medicare payments to a home health agency to be valid, they must comply with all of the requirements for payment set forth in 42 C.F.R. §§ 409.41 and 424.22, including face-to-face encounter and physician certification requirements.

CMS compensates home health agencies through a prospective payment system ("PPS"). 42 C.F.R. Part 484, subpart E. Generally, home health services are provided in 60-day episodes with the home health agency receiving half of the PPS payment at the beginning of the 60-day episode and the balance at the conclusion of the period.[2] Given its prospective nature, the PPS creates the opportunity for unscrupulous providers to bill for services that are not ultimately provided; home health agencies have been determined to have a particularly poor track record in this regard.[3]

Temporary suspension of payment is one of the tools CMS has to protect Medicare funds from fraud, waste, and abuse. 42 C.F.R. §§ 405.370-405.376. The preamble to the suspension regulations instructs that the "purpose of suspending payment is to verify whether, and how much, payment was actually due the provider for past claims and to insure that, if a provider . . . was

---

[2] *See* CMS Medicare Claims Processing Manual, § 10.1.6, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c10.pdf.

[3] *See* HHS Office of Inspector General Report, *Inappropriate and Questionable Billing by Medicare Home Health Agencies*, https://oig.hhs.gov/oei/reports/oei-04-11-00240.pdf.

overpaid, sufficient funds are available to recover the overpayment." 61 Fed. Reg. 63740, 63742-743 (Dec. 2, 1996). Medicare payments to a provider may be temporarily suspended if CMS or its contractor has "reliable information that an overpayment exists or that payments to be made may not be correct" even when "additional information may be needed for a determination." 42 C.F.R. § 405.371(a).

If CMS determines it appropriate, a suspension can be imposed without advance notice. 42 C.F.R. § 405.372(a)(3). The provider does, though, have the opportunity to submit a rebuttal statement explaining why the temporary suspension should be removed. 42 C.F.R. § 405.372(b)(2). Within 15 days of receiving the rebuttal statement, CMS or its contractor must "consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension." 42 C.F.R. § 405.375(a). Providers cannot appeal a determination to impose or continue a temporary payment suspension. 42 C.F.R. § 405.375(a), (c).

A temporary suspension has no effect on a provider's Medicare enrollment and billing privileges, 42 C.F.R. § 424.535, or its provider agreement, 42 C.F.R. § 489.53(a). As a result, even when Medicare payments are temporarily suspended, a provider may still deliver services to Medicare beneficiaries and submit claims for payment to the program. If claims submitted during the temporary suspension are found to be valid, instead of the funds being released to the provider, the money is placed in a temporary escrow account. The suspension may last up to 180 days, until the contractor's investigation of potentially invalid claims is resolved; a suspension may be extended an additional 180 days with CMS's approval. 42 C.F.R. §§ 405.371(a); 405.372(d). Once all claims issues are determined, the suspension is lifted and any funds in the escrow account are first applied to reduce or eliminate any overpayment. 42 C.F.R. § 405.372(e). Next, any

4

remaining funds are "applied to reduce any other obligation to CMS or HHS." *Id*. In the absence of a legal requirement that the remaining funds be paid to another entity, those funds are released to the provider. *Id*.

Temporary payment suspensions allow CMS and its contractor to investigate whether a provider is being or has been paid more by the Medicare program than it should have been while protecting Medicare funds. If CMS or its contractor concludes that the provider was paid too much, *i.e.*, that an overpayment exists, 42 C.F.R. § 405.372(c)(1), the provider has the opportunity to contest the overpayment through the four-part administrative appeal process. 42 U.S.C. § 1395ff; 42 C.F.R. Part 405, Subpart I. In the first level of appeal, the provider seeks redetermination from its Medicare administrative contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. A provider who is not satisfied with the redetermination can seek reconsideration by a qualified independent contractor ("QIC"). 42 U.S.C. § 1395ff(c). QIC panel members must have "sufficient medical, legal, and other expertise, including knowledge of the Medicare program." 42 C.F.R. § 405.968(c)(1). From there, as long as the amount-in-controversy minimum is met, a provider can request a hearing before an administrative law judge. 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1002, 405.1006, 405.1014(b). The regulations require that an ALJ conduct a hearing and issue a decision within no more than 90 days. 42 C.F.R. § 405.1016, 405.1020, 405.1046(d). The administrative process culminates in a review of the ALJ's decision by the HHS Departmental Appeals Board, Medicare Appeals Council ("Council"). 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1100. The Council receives briefs and may entertain oral argument. *Id*. at §§ 405.1120, 405.1124. The Council's decision is the final decision of the Secretary and as such is judicially reviewable. 42 U.S.C. §§ 405(g)-(h), 1395ii; 42 C.F.R. § 405.1136.

**Facts**

On November 16, 2016, AdvanceMed informed MedPro that a temporary payment suspension of its Medicare reimbursements was being imposed effective that day, based upon "reliable information that an overpayment exists or that the payments to be made may not be correct." Dkt. 1, Att. 1 at 1. AdvanceMed explained that the suspension was based, in part, on a review of medical records received from MedPro on March 22, 2016. *Id.* Notably, MedPro certified that, in fulfilling AdvanceMed's request for medical records, it had "provided all existing medical records and supporting documentation to substantiate payment of the Medicare claims[.]" *See* Ex. 1 at 6-7 (a redacted copy of MedPro's certification in response to AdvanceMed's request for medical records on 32 claims). Following its review of the complete medical records, as provided and certified by MedPro, AdvanceMed concluded that MedPro "is billing Medicare for services that were not medically reasonable or necessary and where the required face-to-face encounters and physician recertification were invalid." Dkt. 1, Att. 1 at 1. Accordingly, to safeguard Medicare funds while determining how much MedPro had been overpaid, the temporary Medicare payment suspension was imposed. *Id.* at 1-2. AdvanceMed informed MedPro that the suspension could not be appealed but that MedPro could present a rebuttal statement regarding why the suspension should be removed. *Id.*

On December 6, 2016, MedPro's attorneys submitted a rebuttal statement, including "new" medical records on the same 32 claims that AdvanceMed had already reviewed. Dkt. 1 at ¶¶ 24-25; Dkt 1, Att. 2 at 1. After considering the rebuttal materials, CMS determined that the suspension should continue in order to protect the Medicare Trust Fund, and AdvanceMed informed MedPro of this decision by letter dated December 28, 2016. Dkt. 1, Att. 2 at 1-2. AdvanceMed again

emphasized that its medical review of the records received on March 22, 2016 — which MedPro had certified were complete — supported the continued payment suspension. *Id.*; Ex. 1 at 6-7.

As discussed above, payment suspensions are temporary and require CMS's approval to be extended beyond 180 days. 42 C.F.R. 405.372(d). On April 26, 2017, before 180 days had elapsed, AdvanceMed provided MedPro with notice that CMS had decided to terminate the payment suspension, that any money withheld would be applied to reduce or eliminate any overpayment and any other obligation owed to CMS or HHS, and that in the absence of a legal requirement that the excess be paid to another entity, the excess then would be released to MedPro. Ex. 2.

That same day, AdvanceMed sent MedPro a separate letter detailing the results of its post-payment review of 32 of MedPro's claims. Ex. 3. In that letter, AdvanceMed also provided additional education regarding its findings on the claims. *Id.*

Finally, AdvanceMed informed MedPro in a third letter that it had determined "MedPro has been overpaid by Medicare in the amount of $6,937,712.00." *See* AdvanceMed's April 26, 2017 letter to MedPro regarding the overpayment determination, Ex. 4, at 1 (emphasis omitted). AdvanceMed explained that MedPro's Medicare administrative contractor, Palmetto GBA, LLC ("Palmetto"), would notify MedPro regarding "the amount due, potential repayment options and various appellate procedures." *Id*.

On April 28, 2017, Palmetto informed MedPro about the $6,937,712 overpayment and its appeal rights. Ex. 5. MedPro has 120 days from its receipt of Palmetto's letter (presumed to be five days after the date of the letter) to request a redetermination (the first stage of the administrative appeal process). *Id.* at 4; 42 C.F.R. §§ 405.379(d)(1), 405.942(a).

MedPro filed this case on February 28, 2017, prior to the issuance of AdvanceMed's notice lifting the payment suspension and Palmetto's notice of the overpayment and appeal rights. MedPro asserts that all defendants breached a "nondiscretionary duty" by allegedly failing to "properly and completely respond" to MedPro's rebuttal statement opposing the continuation of the payment suspension in December 2016 and by allegedly not reviewing "additional documentation" submitted with the rebuttal statement. Dkt. 1 at ¶ 44. MedPro also alleges that AdvanceMed should have reviewed three bankers' boxes worth of "new and original" medical records submitted with the rebuttal statement in December 2016 (Dkt. 1 at ¶¶ 44, 25) and that it was "fraud" for AdvanceMed to purportedly not have reviewed these materials after promising to do so (Dkt. 1 at ¶¶ 55-66, 29-33).

## Argument

### I. No Subject Matter Jurisdiction Given the Failure to Exhaust Administrative Remedies

There is no subject matter jurisdiction over MedPro's mandamus or fraud claims because MedPro has not come close to exhausting the administrative remedies required under the Medicare Act. The United States is immune from suit except to the extent it has consented to be sued, and any limitations on its consent impact subject matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). In this case, the Medicare Act explicitly limits the jurisdiction of federal courts in cases involving the Medicare program. *See* 42 U.S.C. § 1395ii, incorporating 42 U.S.C. § 405(h); 42 U.S.C. § 1395ff(b)(1)(A), incorporating 42 U.S.C. § 405(g); 42 U.S.C. § 1395ff(b)(1)(E)(i). MedPro's complaint arises under the Medicare Act (Dkt. 1 at ¶ 16). Specifically, MedPro alleges that AdvanceMed and NCI committed "fraud" (Dkt. 1 at ¶¶ 55-66; 29-33) and that all defendants breached a "nondiscretionary duty" (Dkt. 1 at ¶ 44) when they allegedly failed to "properly and completely respond" to MedPro's rebuttal statement and to

8

review three bankers' boxes worth of "new and original" medical records submitted with the rebuttal statement in December 2016 (Dkt. 1 at ¶¶ 44, 25). Before MedPro may seek judicial review of its challenges to the Medicare payment suspension rebuttal process, it must exhaust all statutorily required administrative remedies. 42 U.S.C. § 1395ii; 42 U.S.C. §§ 1395ff(b)(1)(A), 1395ff(b)(1)(E)(i); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000); *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984); *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586 (7th Cir. 2014). MedPro has not exhausted its required administrative remedies.

Exhaustion under the Medicare Act means that MedPro must proceed through four levels of administrative review. *See supra* at 5. A "final decision" after a "hearing" by the Secretary is a condition of Congress's waiver of sovereign immunity and is a "statutorily specified jurisdictional prerequisite" to suit. *Weinberger v. Salfi*, 422 U.S. 749, 763-64, 766 (1975); *accord, Ringer*, 466 U.S. at 617; *Ill. Council*, 529 U.S. at 23. "All aspects" of MedPro's claims must "be channeled first into the administrative process which Congress has provided for the determination of claims for benefits." *Ringer*, 466 U.S. at 614. This gives the agency "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Ill. Council*, 529 U.S. at 13. Accordingly, if it chooses to appeal the nearly $7 million overpayment, MedPro may raise its contentions regarding the allegedly flawed review of its Medicare payment suspension rebuttal throughout the administrative process and again in federal court once it obtains the Secretary's final decision. 42 U.S.C. § 1395ff(b)(1)(A).

Neither MedPro's mandamus claim nor its fraud claim provides a basis to evade the Medicare Act's requirements without a fully developed administrative record and a final decision from the Secretary. The Supreme Court and Seventh Circuit have repeatedly determined that no

9

subject matter jurisdiction exists in federal court in the absence of administrative presentment and exhaustion of claims arising under the Medicare Act. *See Ill. Council*, 529 U.S. at 13-24; *Ringer*, 466 U.S. at 614; *Ctr. for Dermatology*, 770 F.3d at 590-91; *Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440-42 (7th Cir. 2005); *Martin v. Shalala*, 63 F.3d 497, 500-04 (7th Cir. 1995); *Bodimetric Health Servs.*, *Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 483-90 (7th Cir. 1990). Allowing MedPro to evade exhaustion requirements would frustrate Congress's intent and defeat the purpose and function of the carefully crafted administrative process. *Ringer*, 466 U.S. at 606, 625-26.

In *Ringer*, the Supreme Court affirmed the dismissal of a complaint, including a mandamus claim, for lack of subject matter jurisdiction because respondents had failed to exhaust administrative remedies. 466 U.S. at 616-17. Under the Supreme Court's unequivocal holding in *Ringer*, the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff *only* if he has exhausted *all* other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." 466 U.S. at 616 (emphasis added). The Seventh Circuit's decisions are consistent. *See*, *e.g.*, *Ctr. for Dermatology*, 770 F.3d at 590 (holding that "controlling authority from the Supreme Court and this Circuit is airtight that a litigant may not circumvent the administrative appeals process by seeking mandamus" and citing *Ringer*, *Michael Reese*, and *Ancillary Affiliated Health Servs.*, *Inc. v. Shalala*, 165 F.3d 1069, 1070 (7th Cir. 1998)).

Many other federal appellate courts likewise have declined to exercise mandamus jurisdiction in the absence of exhaustion under the Medicare Act. *See Degnan v. Burwell*, 765 F.3d 805 (8th Cir. 2014) (upholding dismissal of putative class action complaint alleging mandamus jurisdiction, where plaintiffs had neither presented nor exhausted their claims relating

to Medicare Part B premiums); *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012 (10th Cir. 2013) (affirming dismissal of mandamus claim where Medicare provider had failed to challenge denial of reimbursement through administrative process); *Lifestar Ambulance Serv., Inc. v. Thompson*, 365 F.3d 1293, 1298 (11th Cir. 2004) (putative class action complaint of ambulance companies could not rely upon mandamus to compel issuance of a Medicare reimbursement rate schedule in the absence of compliance with the Medicare Act's "comprehensive statutory scheme" for administrative review); *Mich. Ass'n of Homes and Servs. v. Shalala*, 127 F.3d 496, 503 (6th Cir. 1997) (Medicare providers "have not exhausted their remedies and mandamus review is inappropriate."). Arguing mandamus jurisdiction to avoid administrative exhaustion is not novel and has been repeatedly rejected. *Id.* This court should likewise decline to review MedPro's mandamus claim and should dismiss it for lack of subject matter jurisdiction.

MedPro's "fraud" claim fares no better. The Seventh Circuit has affirmed dismissal for lack of subject matter jurisdiction of a complaint raising fraud allegations against Medicare contractors in connection with their processing of reimbursement claims because the provider failed to first exhaust administrative remedies. *Bodimetric*, 903 F.2d at 487-490. Likewise, in addressing challenges to a Medicare payment suspension under mandamus and fraud theories similar to the ones raised by MedPro, a Minnesota district court recently held that no subject matter jurisdiction existed. *See Integrated Nurs. & Health Servs.*, *Inc. v. CMS*, 2017 WL 1373265, Civ. No. 17-683, Mem. Op. (D. Minn. Apr. 13, 2017). Ex. 6. *See also*, *Nichole Med. Equip. & Supply*, *Inc. v. TriCenturion*, *Inc.*, 694 F.3d 340 (3d Cir. 2012) (granting Medicare contractors official immunity, and affirming dismissal of complaint alleging state law tort claims against Medicare contractors for lack of subject matter jurisdiction, in light of failure to achieve administrative exhaustion); *Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996) (dismissing home

11

health agency's appeal regarding temporary Medicare payment suspension for lack of subject matter jurisdiction).

In sum, under the Medicare Act and binding precedent, MedPro cannot proceed in this court under either its mandamus or fraud theories. 42 U.S.C. § 1395ii; 42 U.S.C. §§ 1395ff(b)(1)(A), 1395ff(b)(1)(E)(i); *Ill. Council*, 529 U.S. at 13; *Ringer*, 466 U.S. at 614-15; *Ctr. for Dermatology*, 770 F.3d at 590-91; *Bodimetric*, 903 F.2d at 483-90. MedPro has failed to present and channel its claims about the payment suspension rebuttal process through the four stages of administrative review that are available in connection with the determination that MedPro owes the Medicare program almost seven million dollars. *Id.*; Exs. 2-5. Subject matter jurisdiction therefore does not exist, and MedPro's complaint must be dismissed.

## II. MedPro Cannot Establish Mandamus's Prerequisite of a Breach of a Non-Discretionary Duty.

MedPro's mandamus claim can also be dismissed because MedPro cannot meet the second requirement for this "extraordinary remedy," *i.e.*, that CMS and its contractors failed to perform a "clear, nondiscretionary duty" owed to them. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1013-14 (7th Cir. 1991) (citing *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 (1988) and *Ringer*, 466 U.S. at 616). MedPro complains about the review of its Medicare payment suspension rebuttal, which occurred in the course of CMS's and AdvanceMed's exercise of the *discretionary* duty to ferret out Medicare fraud, waste, and abuse. *Cf. Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 73 (2d Cir. 1998) ("The investigation and reporting of possible Medicare fraud is precisely the type of delegated discretionary function that the public interest requires to be protected by immunity."). MedPro's mandamus claim can be dismissed on this alternative ground.

The regulation at 42 C.F.R. § 405.375, which MedPro relies upon to establish a "nondiscretionary" duty (Dkt. 1 at ¶¶ 38, 44), in fact imbues CMS and its contractors with

discretion. 42 C.F.R. § 405.375(a). The regulation requires only that CMS or its contractor "consider" the suspension rebuttal statement and any "pertinent" evidence submitted with it to determine if a payment suspension should continue. *Id.* It is up to CMS and its contractor to exercise discretion in determining what evidence is "pertinent." *Id.* Because MedPro complains about the exercise of a *discretionary* duty, it cannot proceed under the mandamus statute. *See Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 456-57 (1999) (petitioner not entitled to mandamus relief because Secretary had no "clear nondiscretionary duty" to reopen reimbursement determinations; reopening regulations were permissive); *Ringer*, 466 U.S. at 617 (dismissal of mandamus claim affirmed where Secretary's decision regarding whether medical services are "reasonable and necessary" is "clearly discretionary"); *Integrated*, attached as Ex. 6 at 7 (holding that CMS's duty under 42 C.F.R. § 405.372 to review rebuttal materials in connection with a payment suspension is discretionary and cannot support mandamus jurisdiction). For this additional reason, MedPro's mandamus claim cannot proceed.

**III.    MedPro's "Fraud" Claim Fails to Meet Pleading Requirements under Rules 9(b) and (12)(b)(6).**

MedPro's "fraud" claim also fails because it does not satisfy pleading requirements under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. MedPro's claim is one for "promissory fraud," *i.e.*, that AdvanceMed, a government contractor, did not do something (review rebuttal materials) that it promised in a letter that it would do. *See Wigod v. Wells Fargo Bank*, 673 F.3d 547, 570 (7th Cir. 2012). In Illinois, "promissory fraud" is "a false statement of intent regarding future conduct, as opposed to a false statement of existing or past fact." *Id.* (internal citation and quotation omitted). Promissory fraud is "generally not actionable" in Illinois, unless "the plaintiff also proves that the act was a part of a scheme to defraud." *Id.* MedPro pleads both too little and too much to state a claim for promissory fraud. Fed. R. Civ. P. 9(b), 12(b)(6).

13

MedPro fails to describe a "fraudulent scheme," nor does it plead any details regarding a scheme by a Medicare contractor to somehow "defraud" Medicare providers in connection with allegedly not reviewing suspension rebuttal materials. *See generally*, Dkt. 1. MedPro fails to explain what AdvanceMed achieves by supposedly falsely telling providers it will review suspension rebuttal materials and then not reviewing them. *Id.* MedPro also fails to allege that AdvanceMed did not intend to fulfill its "promise" to review rebuttal materials at the time it was made. *Id.* Thus, MedPro does not state a claim for promissory fraud, which requires allegations of a fraudulent scheme and a false statement of intent about future conduct, Fed. R. Civ. P. 12(b)(6), *Wigod*, 673 F.3d at 570, and MedPro also fails to plead fraud with particularity, Fed. R. Civ. P. 9(b).[4]

MedPro also pleads itself out of court with the allegations it does make, establishing that there was no fraud. *See Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 941-942 (7th Cir. 2012) (plaintiff can plead himself out of court under Rule 12(b)(6), by pleading facts that show he has no legal claim). MedPro asserts that AdvanceMed's November 16, 2016 letter to it (Dkt. 1, Att. 1) promised that it would review its rebuttal and that AdvanceMed allegedly did not do this (Dkt. 1 at ¶¶ 31-33), even though AdvanceMed's December 28, 2016 letter (Dkt. 1, Att. 2) carefully reviews and responds to MedPro's rebuttal. With respect to the three bankers' boxes of materials of "new and original" records that AdvanceMed allegedly did not review (Dkt.

---

[4] Further, while MedPro claims it was damaged because AdvanceMed did not lift the Medicare payment suspension after receiving its rebuttal statement and materials, MedPro alleges no connection between its "damages" and the alleged failure to review the rebuttal. Dkt. 1. Rather, any adverse consequences to MedPro's business are a direct result of MedPro's own abusive billing practices, which resulted in the Medicare program being owed a substantial overpayment. *See* Def. Exs. 1-5; *Compare Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 688 (Ill. App. 2005) (affirming dismissal of common law fraud claim because of failure "to allege damages" related to the supposed fraud; while plaintiff was charged interest "early," this was proper under the Truth in Lending Act).

1 at ¶¶ 25, 31), AdvanceMed's own letters (Dkt. 1 at Att. 1 and 2) explained that the payment suspension was based on its earlier review of all medical records that MedPro itself had certified were complete, Ex. 1 at 6-7. Presuming, for purposes of this motion only, that AdvanceMed did not review the "new" records submitted with the rebuttal, it is within AdvanceMed's regulatory discretion under 42 C.F.R. § 405.375 to decide if such records are "pertinent," and not reviewing them does not amount to "fraud." MedPro's own allegations and the exhibits it attached to its complaint reveal that it has no claim for fraud against AdvanceMed.

## Conclusion

For all of the foregoing reasons, MedPro's complaint should be dismissed in its entirety.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: s/ Kathryn A. Kelly
  KATHRYN A. KELLY
  Assistant United States Attorney
  219 South Dearborn Street
  Chicago, Illinois 60604
  (312) 353-1936
  kathryn.kelly@usdoj.gov

Of Counsel:

JEFFREY S. DAVIS
Acting General Counsel

ALAN S. DORN
Chief Counsel, Region V

LUCY C. LISIECKI
Assistant Regional Counsel
Office of General Counsel
United States Department of Health and Human Services, Region V
233 North Michigan Avenue, Suite 700
Chicago, Illinois 60601

15