IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDPRO HEALTH PROVIDERS, LLC, | ) | |
|                               *Plaintiff,* | ) | |
| vs. | ) | Case No. 17 C 1568 |
| | ) | |
| THOMAS E. PRICE et al, | ) | Judge Kennelly |
|                             *Defendants.* | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

NOW COMES the Plaintiff, Medpro Health Providers, LLC, by and through Michael J. Raiz and Lesley R. Arca and in Response to Defendants Motion to Dismiss, states as follows:

**Applicable Law**

When ruling on a motion to dismiss, all factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court also must draw all possible inferences from the complaint in plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

**Relevant Facts**

On November 16, 2016, AdvancedMed informed MedPro of the institution of a payment suspension ("notice of payment suspension") based upon "reliable information that an overpayment exists or that payments to be made may not be correct." Dkt. 1, Att. 1 at 1. The notice did not include a determination of fraud. *Id*. The notice of payment suspension informed MedPro:

> Pursuant to 42 C.F.R. § 405.372(b)(2), you have the right to submit a rebuttal statement in writing addressing why the suspension should be removed. You may include with this statement any evidence you believe is pertinent to your reasons why the suspension should be removed. … If you submit a rebuttal statement, CMS will review that statement (and any supporting documentation) along with other materials associated with the case. … CMS will determine whether the suspension should be removed or should remain in effect, based on a careful review of the information you submit and all other information known to us. Thereafter, we will notify you in writing of CMS' determination to continue or remove the suspension, and provide specific findings on the conditions upon which the

1

suspension may be continued or removed, as well as an explanatory statement of the determination. 42 C.F.R. § 405.372(b)(2). This determination is not appealable. 42 C.F.R. § 405.372(c).

On December 6, 2016, MedPro submitted a Rebuttal Statement to AdvanceMed with supporting documents and 3 banker's boxes of new and original documents. Dkt. 1 at 4, ¶¶ 24-25.

On December 28, 2017, AdvanceMed delivered a boilerplate response to the rebuttal statement. Dkt. 1 at 5, ¶ 27, Att. 2. The rebuttal statement response stated "[a]fter reviewing the statement, supporting documentation and the facts and law supporting suspensions, CMS has decided to continue the suspension of payment." Dkt. 1 at 5, ¶ 28, Att. 2. AdvanceMed did not review the supporting documentation.[1] Dkt. 1 at 5, ¶¶ 30-33.

Specifically on January 6, 2017, MedPro spoke with AdvanceMed representatives to inquire why AdvanceMed "did not address the additional/supporting documentation as submitted with the rebuttal statement." Dkt. 1 at 5, ¶ 30. AdvanceMed told MedPro that it is not the policy of AdvanceMed to review additional documentation, including medical records, and that AdvanceMed had no obligation to review the additional documentation. Dkt. 1 at 5, ¶ 31. AdvanceMed informed MedPro that it never reviews additional/supporting documentation. Dkt. 1 at 5, ¶32. AdvanceMed informed MedPro that CMS does not want AdvanceMed to review the additional documentation, including medical records. Dkt. 1 at 5, ¶ 33.

Because of the failure to review the additional documentation, which continued the payment suspension, MedPro as of the time of the Complaint has a continued payment suspension

---

[1] Defendants assert in their Motion to Dismiss that "after considering the rebuttal materials" that the payment suspension should continue, however for purposes of this Motion to Dismiss, the factual allegations contained in ¶¶ 30-33, that the records were not reviewed and that it is the statement by AdvanceMed that it is the policy of AdvanceMed not to review additional documentation submitted with the rebuttal statement is taken as true. See *Epstein, infra.*

of $300,000, laid off a significant amount of its workforce, and closed its business from lack of funds to meet payment obligations, and continues to suffer financial harm. Dkt. 1 at 10, ¶¶ 65-66.

On February 28, 2017, MedPro filed the instant lawsuit. Dkt. 1. Since the filing of the lawsuit, on April 25, 2017, CMS issued a notice terminating the temporary suspension, a post-payment review of additional claims and an overpayment determination. Dkt. 16 at 7.

I.     **This Court possesses Subject Matter Jurisdiction pursuant to 28 U.S.C. § 1361**

Count I of the Complaint seeks relief under 28 U.S.C. § 1361. 28 U.S.C. § 1361 states:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Specifically in Count I, Plaintiff asks this Court to grant mandamus relief to compel enforcement by CMS and its contractors to comply with 42 C.F.R. § 405.375(a) & (b) that requires:

> 42 C.F.R. § 405.375 - Time limits for, and notification of, administrative determination after receipt of rebuttal statement.
>
> (a) Submission and disposition of evidence. If the provider or supplier submits a statement, under § 405.374, as to why a suspension of payment, offset, or recoupment should not be put into effect, or, under § 405.372(b)(2), why a suspension should be terminated, CMS, the intermediary, or carrier MUST within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment. Suspension, offset, or recoupment is not delayed beyond the date stated in the notice in order to review the statement.
>
> (b) Notification of determination. The Medicare contractor must send written notice of the determination made under paragraph (a) of this section to the provider or supplier. The notice must -
> 1. In the case of offset or recoupment, contain rationale for the determination; and
> 2. In the case of suspension of payment, contain specific findings on the conditions upon which the suspension is initiated, continued, or removed and an explanatory statement of the determination.

Defendants argue that this Court lacks subject matter jurisdiction in that "[b]efore MedPro may seek judicial review of its challenges to the Medicare payment suspension rebuttal process, it

3

must exhaust all statutorily required administrative remedies." Dkt. 16 at 9. Defendants assert that § 405(h) (Finality of Commissioner's Decision) restricts the ability of the District Courts under § 405(g) (Judicial Review) to grant mandamus relief citing *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 (2000), *Weinberger v. Salfi*, 422 U.S. 749 (1975), *Heckler v. Ringer*, 466 U.S. 602 (1984) and *Ctr. for Dermatology & Skin Cancer, Ltd. V. Burwell*, 770 F.3d 586 (7th Cir. 2014).

None of the above opinions are relevant where each involved a determination of the applicability of § 405(h) to a claim seeking relief under 28 U.S.C. 1331[2] (Federal Question). To be sure, the *Ringer* court acknowledged that it has on numerous occasions declined to decide whether § 405(h) bars mandamus jurisdiction over claims arising under the Social Security Act. To date, neither the Supreme Court or any Court of Appeals has specifically determined the issue. However, Courts in our Northern District have twice spoken on the issue.

In *Hennings v. Heckler*, 601 F.Supp. 919, 923-924 (N.D. Ill. 1985) stated that "every court of which we are aware which has explicitly decided the issue has found that, 'under circumstances where the writ [of mandamus] properly would issue' … §1361 'provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits.'"

Subsequently in *Burnett v. Heckler*, 625 F.Supp. 831, 837 (C.D. Ill. 1986), the court confirmed the declination of the Supreme Court and this Circuit to determine if § 405(h) precludes a court's exercising jurisdiction under § 1361. The *Burnett* court stated that "those courts that have done so have unanimously held that under circumstances where the writ of mandamus properly would issue, § 1361 provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits (citations omitted). Defendants' blanket assertion and authorities that § 1361 relief expressly is precluded by § 405(h) is unsupported under current law.

---

[2] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

In *Degnan v. Burwell*, 765 F.3d 805 (8th Cir. 2014), the court reviewed a claim alleging a miscalculation of their Medicare Part B premium calculations. The *Degnan* court held that claimants at bottom were "ultimately challenging the amount of premiums paid, a determination that should be first made by the agency and as such mandamus relief was available." *Id.* at 810.

In *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012 (10th Cir. 2013) provider's administrative claim was time-barred. The court declined to allow mandamus relief as a substitute for the time-barred action that could have been reviewed in the administrative process.

In *Lifestar Ambulance Serv. Inc. v. Thompson*, 365 F.3d 1293, 1298 (11th Cir. 2004) the court dealt with the disputed implementation of a fee schedule. The Court did not find that the argument as to implementation could be addressed administratively and judicially after exhaustion.

In *Mich. Ass'n of Homes & Servs. v. Shalala*, 127 F.3d 496, 503 (6th Cir. 1997), provider argued jurisdiction where the termination regulation did not address a lesser alternative sanction. Relying upon CMS' concession as to the inclusion of lesser remedies and on the legislative history, the court declined to exercise mandamus relief where administrative review was available.

In each of the above cases, the issue of payment/licensure was intertwined with the ultimate issue of disposition of the claim. That is not the case here. Our case is significantly different because MedPro can receive no relief through the administrative process or judicial review of the overpayment issues appealed. Exhausting administrative remedies would serve no purpose.

§ 405.375 was created to specifically address payment suspensions through the Federal Regulations and Medicare Program Integrity Manual ("PIM"), and to provide a specific gateway mechanism to protect providers. The mandamus issue relates solely and exclusively to defendants' obligation to review its rebuttal statement including additional submitted documentation pursuant to § 405.375(a)&(b). § 405.375 does not contemplate a determination of overpayment of claims

5

or the methodology regarding such overpayment.³ Defendants' express failure to review the additional documents is appropriate for mandamus relief.

Mandamus is appropriate where (1) the defendant is owed a clear, nondiscretionary duty to the plaintiff, and (2) Plaintiff has exhausted all other avenues of relief. *Ringer* at 309.

A.   *Plaintiff seeks to enforce a clear, nondiscretionary duty owed to MedPro.*

42 U.S.C. § 405.375 as a stand-alone provision affording Provider the opportunity to submit a rebuttal statement with additional documentation for review mandates that:

> "CMS, the intermediary, or carrier **must** within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case" for the purpose of "determin[ing] whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment."

§ 405.375 exists to grant Provider the opportunity to submit documents in rebuttal to the suspension itself. Nothing speaks to a determination of the value or amount of benefits to be paid.

The term MUST in § 405.375(a) imposes a nondiscretionary obligation to review of the rebuttal statement "including any pertinent evidence submitted." There are no exceptions.

To be sure, in the Federal Register eventually codified to § 405.376 (Medicare Program; Changes Concerning Suspension of Medicare Payments, and Determinations of Allowable Interest Expenses, 61 Fed. Reg. 63,740, 740-45 (Dec. 2, 1991) enclosed as Ex. 1), the agency recognized that importance of a timely review mechanism for payment suspensions:

> several commenters expressed concern that the proposed changes concerning suspension of Medicare payments in cases of overpayments would allow an intermediary or carrier to withhold all payment to a provider or supplier without notification until an overpayment was recouped and that this could have a devastating effect on the case flow of providers and suppliers, possibly even causing bankruptcies.

---

³ Defendants assert that the temporary suspension was lifted and a determination as to overpayments including extrapolated relief was issued on April 26, 2017, however these were issued after the filing of the complaint. The issues relating to overpayment are subject to administrative review for which Plaintiff will exercise its rights accordingly.

6

In response, the agency stated that:

> We believe that the notice requirement provides ample time for providers and suppliers to submit evidence to the intermediary or carrier to prevent suspension, recoupment or offset and to avoid cash flow problems.

Even our courts have recognized the "withholding of payments, which may be properly due, is a deprivation which may itself punish or destroy the supplier." *Electro-Therapeutics, Inc. v. Bowen*, 1988 U.S. Dist. LEXIS 998 at *8 (S.D.N.Y. Feb. 2, 1988).

§ 405.375 requires that review be conducted within 15 days and must contain specific findings upon which the suspension is to be … continued. PIM § 8.3.2.2.5 mandates:

> Because suspension actions are not appealable, the rebuttal is the provider's only opportunity to present information as to why suspension action should not be initiated or should be terminated. ZPICs shall carefully review the provider's rebuttal statement and pertinent information, and shall consider all facts and issues raised by the provider.

Dkt. 1 at 7, ¶ 40. Defendants' assertion that § 405.375 is discretionary is misleading. Discretion allowed is afforded substantively to the merits of whether to implement, continue, or terminate the payment suspension. No such discretion is afforded to the procedural requirement that the review be conducted. Defendants' discretion argument must necessarily fail because discretionary substantive determination only exists after the nondiscretionary procedural review takes place. Defendants never conducted the nondiscretionary review mandated under § 405.375. Dkt. 1 at 5, ¶¶ 30-33. Defendants' obligations under § 405.375 are clear and nondiscretionary.

B.  *Plaintiff has exhausted all other avenues of relief.*

Medicare's exhaustion requirement is nullified where they have no other avenue of relief because to resort to administrative remedies is "futile." *Lifestar*, 365 F.3d at 1296.

§ 405.375 was created with a certain purpose (i.e. to give providers a review mechanism regarding the payment suspension) in an expedited timeframe (i.e. within 15 days). The exhaustion requirement was not included and likely not even contemplated under § 405.375 because the

review obligation is presumed. Requiring providers to await exhaustion, simply renders § 405.375's purpose and applicability illusory. Any judicial review as to AdvanceMed's review of the rebuttal statement and any additional documents after exhausting administrative remedies[4] provides no remedy and thus serves no purpose and is futile *per se*.

Every case cited by Defendants speaks to a substantive determination of certain ultimate administrative relief either in the form of amount of payment or termination of provider licensure. In each case, arguments sounding in mandamus related to an issue existing on the edge of requesting ultimate administrative relief regarding payment. The sole issue on mandamus here truly has no bearing on the issue of overpayment or its determination. MedPro asks for Mandamus where defendants refuse to comply with the imposed condition precedent to payment suspension.

Defendants cite *Integrated Nurs. & Health Servs., Inc. v. CMS*, 2017 WL 1373265, Civ. No. 17-683, Mem. Op. (D. Minn, Apr. 13, 2018). However, *Integrated* is distinguishable because the contractor actually reviewed the records (even though it decided they were not relevant). In our case, AdvanceMed never even reviewed the records.

*Mandamus is the only appropriate avenue of relief*

AdvanceMed's ignorance of § 405.375 amounts to preclusion of review for which mandamus is uniquely the only appropriate relief. MedPro agrees that mandamus is an extraordinary remedy, however the circumstances in this matter involving the payment suspension issue are very special and unique. So special that even the Agency identified and qualified it important enough to require special regulation in the form of § 405.375 and PIM § 8.3.2.2.5. These circumstances are exactly what mandamus relief under § 1361 was intended to remedy.

*§1361 provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits.*

---

[4] 405.375(c) precludes appeal of a review of the rebuttal statement in that it is not an initial determination.

Courts have consistently recognized that § 1361 is available to review "unreviewable procedural issues" unrelated to the merits of a claim for benefits. *Dietsch v. Schweiker*, 700 F.2d 865, 868 (2d Cir. 1983), *Lopez v. Heckler*, 725 F.2d 1489, 1507-08 (9th Cir. 1984), *Belles v. Schweiker*, 720 F.2d 509, 511-12 (8th Cir. 1983), *Kuehner v. Schweiker*, 717 F.2d 813, 819 (3d Cir. 1983) and *Ellis v. Blum*, 643 F.2d 68, 78-82 (2d Cir. 1981).

MedPro has no alternative means to obtain the relief they seek. The administrative review process does not contemplate a review of the provider's rights under § 405.375. Defendants admit that the administrative process is limited to a determination "that the provider was paid too much, i.e., that an overpayment exists." Dkt. 16 at 5. To be sure, even defendants confirm that the administrative review regarding the failure to review the rebuttal statement and its additional records would grind to a halt in that under the third level of appeal through an Administrative Law Judge where there is an imposed "amount-in-controversy minimum." *Id.*

Where there is a clear and nondiscretionary duty upon Defendants to review the rebuttal statement with additional documents, subject matter jurisdiction exists under § 1361.

**II.     AdvanceMed cannot escape liability pursuant to derivative immunity**

AdvanceMed cannot escape liability in their failure to comply with the nondiscretionary obligations under § 405.375 and PIM § 8.3.2.2.5. Under PIM § 1.3.3, AdvanceMed is required to "follow all sections of the PIM" and "shall follow the PIM to the extent outlined in their [Statement of Work]s." Dkt. 1 at 7, ¶ 42.

For purpose of this motion to dismiss, all well plead facts are taken as true. These must necessarily include AdvanceMed's statements to Plaintiff on January 6, 2017 that;

1. it is their policy not to review additional documentation, including medical records as submitted with the rebuttal statement (Dkt 1 at 5, ¶31);
2. it has no obligation to review the additional documentation (Dkt 1 at 5, ¶31);
3. it never reviewed additional/supporting documentation (Dkt 1 at 6, ¶32); and,

4. it believes that CMS does not want AdvancedMed to review the additional documentation, including medical records (Dkt 1 at 5, ¶33).

In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) our Supreme Court declared that:

> "government contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States. (citation omitted). That immunity, however, unlike the sovereign's is not absolute. … When a contractor violates both federal law and the Government's explicit instructions … no "derivative immunity" shields the contractor from suit by persons adversely affected by the violation."

AdvanceMed cannot avoid these regulatory and contractual obligations. Under § 4.2.2.2 – Liability of Zone Program Integrity Contractor Employees is not unlimited, stating

> [u]nder the terms of their contracts (refer to 42 CFR § 421.316(a)), ZPICs, their employees and professional consultants are protected from criminal or civil liability as a result of the activities they perform under their contracts as long as they use due care.

For purposes of their motion to dismiss, AdvanceMed is held to the truth of their representations and the reasonable inferences thereto. AdvanceMed did not use due care in carefully reviewing the rebuttal statement and pertinent information considering all facts and issues raised by the provider as required in PIM § 8.3.2.2.5 and did not send written notice containing specific findings as required by § 405.375(b). This is confirmed by a cursory review of AdvanceMed's response to the rebuttal statement (Dkt. 1, Ex. 2). Indeed, Defendants seem to confirm that no such review of the additional documentation was completed where they on multiple occasions reference that MedPro certified that it had provided all existing medical records and supporting documentation in its original submission. Dkt. 16 at 6-7. Even if MedPro had certified that it had provided all existing medical records and supporting documentation, nothing prevents MedPro from providing additional medical documentation including affidavits of primary care physicians. Dkt. 1 at 4, ¶ 24. Indeed, AdvanceMed even informed MedPro of the right to submit additional information. Dkt. 1, Ex. 1.

Defendants cite *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487-490 (7th Cir. 1990) seeking immunity for AdvanceMed. *Bodimetric* involved a review of Aetna as a fiscal intermediary. AdvanceMed is not a fiscal intermediary but rather a Zone Program Integrity Contractor. Citing *Ringer*, the *Bodimetric* court stated that claims arising under other statutes may be barred by § 405(h) if they are also "inextricably intertwined" with benefits determinations under the Medicare Act. *Id.* To be sure, the *Bodimetric* court applied the amount versus eligibility determinations as identified in *Erika* and *Michigan Academy*, respectively, and determined the other claims to be barred where such claims were of the "amount determination" category. *Id.* In the instant matter, Plaintiff seeks no benefit determination at all. The cause of action seeks mandamus for a statutorily protected review mechanism and for damages for fraud arising out of AdvanceMed failure of due care.

Defendants interestingly argue that "[neither] MedPro's mandamus claim nor its fraud claim provides a basis to evade Medicare Act's requirements without a fully developed administrative record and final decision from the Secretary." Such assertion is hollow and simply without merit. If this case involved a determination of benefits to be paid and the methodology applicable to same, then a more fully developed record would be necessary. As to the payment suspension, the only inquiry is whether AdvanceMed reviewed MedPro's rebuttal statement including the additional documentation. This information is solely and completely within the records of AdvanceMed for which Defendants cannot reasonably claim prejudice.

Defendant cites *Integrated Nurs. & Health Servs., Inc. v. CMS*, 2017 WL 1373265, Civ. No. 17-683, Mem. Op. (D. Minn, Apr. 13, 2018). While *Integrated* also dealt with a review of a rebuttal statement in a fraud allegation, unlike the instant matter, the *Integrated* court noted that

11

the ZPIC actually considered the rebuttal statement and additional documentation and appropriately dismissed due to lack of exhaustion of administrative remedies. *Id.*

In *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340 (3d Cir. 2012) the court was not faced with a payment suspension rebuttal but rather a claim that was inextricably intertwined with the supplier's claim for benefits. The *Nichole* court citing *Shalala*, 529 U.S. at 12, stated "a claim 'is inextricably intertwined' if it does not involve issues separate from the party's claim that it is entitled to benefits and/or if those claims are not completely separate from its substantive claim to benefits." *Id* at 348. In *Nichole*, the court declined to exercise jurisdiction where its claims for damages was ultimately part of the benefit payment process itself.

Unlike in *Nichole*, at the time this action was filed, there was no determination of overpayment and no avenue of appeal regarding overpayment whatsoever. The claim of for Mandamus relief pursuant to § 405.375 simply seeks that the gateway review as to payment suspension be fully conducted. The entirety of plaintiff's claim falls under one simple analysis … did AdvanceMed conduct the required review of the rebuttal statement as required under § 405.375? Where this analysis can be done outside of any consideration of benefits, then the claim is not inextricably intertwined with the issues involved in the administrative review.

In *Clarinda Home Health v. Shalala*, 100 F.3d 526 (8th Cir. 1996), the court dealt with the denial of a motion for preliminary injunction from suspension of Medicare payments without a hearing based on its failure to comply with the constitutional exception to the statutory exhaustion requirement. The facts of the instant matter do not involve a constitutional claim.

Under *Gomez*, AdvanceMed's violation of federal law and the Government's explicit instructions, prevents AdvanceMed from asserting derivative immunity[5].

---

[5] For purposes of this motion to dismiss, the Secretary and AdvanceMed are represented by joint counsel, however their interests diverge where the factual allegations place the instructions and application of the

### III. The Complaint states a Cause of Action for Fraud

Defendants further argue that the complaint does not state a cause of action for fraud arguing that the complaint states too little and too much. Defendants ignore the obvious.

Federal Court simply requires notice pleading … that the complaint only contain a short and plain statement of the cause of action (i.e. to put the other side on notice of the lawsuit). *Erickson*, 551 U.S. at 93. Plaintiff needs only assert relevant facts to allege fraud. Plaintiff needs not prove its entire case. Moreover, Plaintiff is entitled to every reasonable inference from the well plead facts. *Justice*, 577 F.3d at 771.

While AdvanceMed is correct that promissory fraud is a "false statement of intent regarding future conduct, as opposed to a false statement of existing or past fact" defendants seek dismissal arguing that that plaintiff has failed to "prove that the act was part of a scheme to defraud." The complaint outlines sufficient facts and the reasonable inferences to support fraud.

Moreover, where AdvancedMed cannot assert derivative immunity if it did not conduct the review of the rebuttal statement, then any bar as to AdvanceMed would not be of benefit to the Secretary, such that exhaustion through administrative remedy would truly be futile.[6]

Complaint ¶¶ 30-33 outline a series of representations by AdvanceMed's management to MedPro that are taken as true. Dkt. 1 at 5. § 405.372(a)&(b) and PIM § 8.3.2.2.5 impose nondiscretionary obligations upon AdvanceMed to timely consider the totality of any rebuttal statement. AdvanceMed never reviews the additional documentation. Dkt. 1 at 5, ¶¶ 31-32.

---

rules of CMS, in opposition to the actions of AdvanceMed. Where qualified immunity places AdvanceMed in direct conflict with CMS, there exists at the very least the propriety of a conflict of interest.

[6] Notably, neither defendant asserts lack of jurisdiction by actually submitting evidence that a review, including the additional documents was as indeed conducted.

It is public knowledge that Medicare Integrity Program Contractors are awarded contracts. 42 C.F.R § 421.306. Similarly, 48 C.F.R. § 1.102-2(a)(3) mandates that the Government "use contractors who have a track record of successful past performance of who demonstrate a superior ability to perform." The import being that for AdvanceMed to continue its business operations with the Government, it must show a continuous track record of successful past performance.

Due to AdvanceMed's misrepresentation (Dkt. 1 at 10, ¶ 65), MedPro has suffered a continuing payment suspension that has crippled its cash flow, forced expending unnecessary significant financial resources, forced laying off a significant amount of its workforce, all resulting in the closure of its business. § 405.375 is MedPro's only mechanism it can assert its rights.

It can be reasonably inferred that AdvanceMed's knowing failure to honor its obligations to consider the rebuttal statement in its totality, while making fraudulent representations to MedPro (and CMS as well) that it would and did conduct the review when it has not, places MedPro and all providers on an inevitable journey to financial destruction and, like in MedPro's case, business closures. These actions are not merely speculation but have been recognized in the regulatory history of § 405.376 and in case law. 61 Fed. Reg. 63,740, 740-45 (Dec. 2, 1991) (Ex. 1), *Electro-Therapeutics, Inc.*, 1988 U.S. Dist. LEXIS 998 at *8 (asserting that "withholding of payments, which may be properly due, is a deprivation which may itself punish or destroy the supplier.")

Defendants feign ignorance of the obvious as to what AdvanceMed stands to gain. Most simply put, when AdvanceMed places a provider in a vulnerable position due to a payment suspension, promises and informs the provider that it has rights and would comply with review of such rights, but systematically deprives provider of its sole avenue of protection the inevitable must occur … the business operations close due to lack of resources, the lack of resources leads to difficulty or complete inability to contest the overpayment determination and ultimately there

results in a final determination of overpayment. AdvanceMed may then use this overpayment determination as proof of their "track record of successful past performance" to bolster its contract acquisition process under 42 C.F.R. § 421.306.

The gateway mechanism under § 405.375 was created not to interfere with the determination of overpayment and has absolutely no bearing whatsoever on such determination. The complaint outlines sufficient facts and reasonable inferences to state a cause of action for fraud. However, to the extent that this Honorable Court finds that MedPro has not pled sufficient facts evidencing AdvanceMed's fraudulent scheme, MedPro respectfully requests leave to file an amended Count II pursuant to Fed. R. Civ. P. 15.

Defendants also argue that AdvanceMed's position that MedPro has pled too much asserting that it is agreed that AdvanceMed may exercise discretion pursuant to § 405.375 and thus has no action sounding in fraud. MedPro has not made this admission in the pleadings. For the reasons as stated above, AdvanceMed confuses the ultimate determination under § 405.375 with is nondiscretionary obligation to conduct a review of the rebuttal statement in its entirety.

For the reasons as set forth above the motion to dismiss should be denied.

**Conclusion**

WHEREFORE the Plaintiff MedPro Health Providers, LLC respectfully requests this Honorable Court to deny Defendants' Motion to Dismiss and for any and all other relief as this Honorable Court deems fair and just.

Respectfully submitted,

By: ____/s/ Michael J. Raiz & /s/ Lesley R. Arca
Michael J. Raiz 6220425; mraiz@jurisprudencehealth.com
Lesley R. Arca 6315184; larca@jurisprudencehealth.com
1260 Iroquois Avenue, Ste 104, Naperville, IL 60563
(630) 995-9220