UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDPRO HEALTH PROVIDERS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THOMAS E. PRICE, Secretary of Health and ) <br> Human Services, *et al.*, ) <br> ) <br> Defendant. ) | No. 17 C 1568 <br><br> Judge Kennelly |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

The court should dismiss MedPro's complaint based on its admitted failure to exhaust administrative remedies. Without exhaustion, no subject matter jurisdiction exists in this case arising under the Medicare statute.[1] Plaintiff MedPro confirms that this case involves only whether defendant HHS's contractor, AdvanceMed, failed to consider "additional documentation" submitted in opposition to a Medicare payment suspension, MedPro Resp. at 2, thus, its related mandamus and fraud challenges must be channeled through Medicare administrative review. *See* n. 1. Further, MedPro fails to satisfy any of the three conditions required to obtain a waiver of exhaustion requirements. MedPro also cannot identify a non-discretionary duty, a prerequisite for its mandamus claim, and does not plead a viable fraud claim. For all of these reasons, this case should be dismissed.

---

[1] *See* 42 U.S.C. §§ 1395ff(b)(1)(A), 1395ii (incorporating 42 U.S.C. §§ 405(g), (h)); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5, 13-14 (2000); *Heckler v. Ringer*, 466 U.S. 602, 615-17 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 763-65 (1975), *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586 (7th Cir. 2014); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 489-90 (7th Cir. 1990).

**I.      MedPro Establishes No Basis to Avoid Administrative Exhaustion Requirements.**

No factual basis exists to allow MedPro to bypass the administrative process, which MedPro admits it has started. Likewise, MedPro offers no salient legal support to avoid exhaustion and fails to effectively distinguish binding precedent that requires exhaustion. Finally, MedPro satisfies none of the three conditions for waiver of exhaustion and not meeting even one condition prevents waiver. Accordingly, the complaint must be dismissed.

**A.      The Ongoing Administrative Process Precludes MedPro's Claim.**

MedPro provides no support for its position that, without the benefit of a final administrative decision, this court should decide its mandamus and fraud claims relating to AdvanceMed's alleged failure to review its payment suspension rebuttal materials. A payment suspension is a regulatory tool under 42 C.F.R. § 405.371(a)(1); it imposes a time-out on prospective Medicare claim reimbursements to allow "the necessary facts" to be "gathered and evaluated" and ensure that only proper payments are made. *Clarinda Home Health v. Shalala*, 100 F.3d 526, 530 (8th Cir. 1996); HHS Mem. at 4-8. Because a payment suspension is a temporary, interim measure, it is not appealable. *Id.*; 42 C.F.R. § 405.375(a), (c).

Though a provider cannot appeal, it can submit a rebuttal statement to request that a suspension be lifted. 42 C.F.R. § 405.372(b)(2). Within 15 days of receiving the rebuttal statement, the agency or Medicare contractor must "consider the statement (including any *pertinent* evidence submitted) together with any other material bearing upon the case, and determine whether the facts justify the suspension." 42 C.F.R. § 405.375(a) (emphasis added). It is within the contractor's discretion to determine whether evidence is pertinent and whether to continue the suspension. *Id.*; *Integrated Nurs. & Health Servs. v. Ctrs. for Medicare & Medicaid*

*Servs.*, No. 17-683, 2017 WL 1373265, at 3 (D. Minn. 2017). No appeal rights attach if the contractor continues the suspension despite the rebuttal. 42 C.F.R. § 405.375(a), (c).

Once a temporary payment suspension serves its purpose of allowing the contractor time to investigate and make determinations on potentially suspect claims, the suspension may be lifted. *Id.*; HHS Mem. at 5. Providers then can appeal any denied Medicare claims and any overpayment assessed against them. *Id.* Here, AdvanceMed lifted MedPro's suspension upon determining that MedPro owes almost $7 million to the Medicare program. HHS Mem. at Exs. 2, 4. MedPro admits it has appealed the overpayment and now it must proceed through four levels of administrative review. MedPro Resp. at 5; HHS Mem. at 5.

Administrative exhaustion will prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors." *Salfi*, 422 U.S. at 765. It further affords "the parties and the courts the benefit" of the agency's "experience and expertise," and allows the agency "to compile a record which is adequate for judicial review." *Id.* Even though the administrative process is ongoing, MedPro asks this court to review whether AdvanceMed erroneously failed to consider all materials that MedPro submitted with its rebuttal statement opposing the payment suspension. MedPro concedes that AdvanceMed reviewed the rebuttal statement itself. Dkt. 1, ¶¶ 25-33; Dkt. 1, Att. 2, ¶ 25. MedPro complains only that AdvanceMed purportedly did not review the "additional documentation" submitted with the rebuttal statement. *Id.*

The "additional documentation" consists of three boxes of "new and original" medical records on certain Medicare claims. Dkt. 1, ¶ 25. MedPro previously certified that its original submission of medical records on these claims was complete, and AdvanceMed relied upon the original submission in imposing the payment suspension. HHS Mem. at Ex. 1, 6-7; Dkt. 1, Att. 1.

Yet, MedPro speculates—without factual support—that, had the "additional documentation" been considered, the payment suspension would have been lifted earlier, MedPro would have received a steady stream of prospective Medicare reimbursements, and MedPro would have avoided adverse financial consequences to its business. MedPro Resp. at 2-3.

MedPro's baseless speculation that its "additional documentation" would have resulted in an earlier termination of the suspension (and the resumption of Medicare reimbursements) is belied by the almost $7 million overpayment assessed against MedPro after the investigation into its billings concluded. Def. Br. at Exs. 4-5. AdvanceMed put the payment suspension into place to safeguard Medicare's interests during its investigation. Dkt. 1, Att. 1. MedPro's rebuttal opposing the payment suspension failed to overcome the concern that an overpayment existed. Def. Br. at Exs. 4-5; Dkt. 1, Att. 2.[2] Thus, the Medicare contractors did not lift the payment suspension until they finished their investigation and found that MedPro owes a substantial overpayment to the Medicare program. 42 C.F.R. § 405.372(d); Def. Br. at Exs. 2, 4-5.

If, for purposes of this motion only, it is presumed that AdvanceMed erred by failing to consider pertinent evidence at the suspension rebuttal stage, this error is indistinguishable from any other claim of error that is subject to correction during administrative review. MedPro can appeal any denied claims and can submit any allegedly ignored evidence at further levels of administrative review. *See* Def. Br. at 5 (setting forth the statutory and regulatory requirements of the four-level administrative review process). Likewise, MedPro can administratively appeal the overpayment determination, which is based on a statistical sample of claims that were denied in

---

[2] In addition to the three boxes of medical records, MedPro also submitted an affidavit from a healthcare provider with its rebuttal materials. Dkt. 1, ¶ 24. AdvanceMed concluded that the affidavit's allegation that services purportedly provided were "reasonable and necessary" did not cure the technical defects in the underlying claims seeking reimbursement for those services. Dkt. 1, Att. 2 at 2.

whole or in part. *Id.*; Def. Br. at Ex. 4. The administrative process is designed to allow the agency to correct any errors and to develop a record on contested issues. *Salfi*, 422 U.S. at 765.

MedPro asserts, incorrectly, that it "can receive no relief through the administrative process or judicial review of the overpayment issues appealed," that exhaustion "would serve no purpose," and that only mandamus will afford relief. MedPro Resp. at 5, 8. Mandamus is not needed to end the payment suspension — that point is now moot as the suspension is no longer in effect. The remaining contested issues — regarding Medicare claims denials and the assessment of an overpayment — are subject to plenary administrative and judicial review. Def. Br. at 5. MedPro concedes that the administrative process is available to it and admits that it has already appealed the determination that it owes almost $7 million to the Medicare program. MedPro Resp. at 5; Def. Br. at Ex. 4. The administrative process must be allowed to run its course and this complaint should be dismissed.

> **B. MedPro Fails to Distinguish Binding Cases and Relies on Inapposite and Non-Precedential Decisions.**

In asking for this court's premature involvement, MedPro brushes aside the leading Supreme Court precedents, *Illinois Council*, *Ringer*, and *Salfi*, and the Seventh Circuit's recent decision in *Center for Dermatology*, as "not relevant." MedPro Resp. at 4; n. 1, *supra*. These cases are highly relevant. All unequivocally hold that challenges arising under the Social Security Act — like MedPro's challenge involving a Medicare payment suspension — cannot proceed in federal court in the absence of administrative exhaustion. *Id.* MedPro ignores this crucial point, and instead erroneously claims that the Secretary seeks dismissal because mandamus relief is "precluded by § 405(h)" of the Social Security Act. MedPro Resp. at 4.

Section 405(h), incorporated into the Medicare statute by 42 U.S.C. § 1395ii, provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person [or] tribunal .

5

. . except as herein provided," *i.e.*, except as provided by the Medicare statute itself. As the Sixth Circuit recognized, it is "arguable" given the history of § 405(h), that § 405(h) bars mandamus. *BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 n. 11 (6th Cir. 2005). *See also*, *Total Renal Labs., Inc. v. Shalala*, 60 F. Supp.2d 1323, 1331 (N.D. Ga. 1999) (holding that § 405(h) precludes mandamus actions). While MedPro correctly observes that the Supreme Court has not "specifically determined the issue" of whether mandamus claims are *per se* barred by § 405(h), MedPro Resp. at 4, the Supreme Court deliberately has left the issue open. *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 457 n. 3 (1999); *Ringer*, 466 U.S. at 616-17.

In any event, whether § 405(h) should *per se* bar mandamus is less important after the Supreme Court's decisions in *Ringer* and *Illinois Council*, given their strict demands on the channeling and exhaustion requirements for all aspects of Medicare claims. *See, e.g.*, *BP Care*, 398 F.3d at 515 ("[T]he *Ringer* decision has an effect similar to that of placing mandamus within § 405(h)'s jurisdictional bar."). *Ringer* itself affirmed the dismissal of a complaint, including a mandamus claim, for lack of subject matter jurisdiction where respondents had failed to exhaust administrative remedies. *Ringer*, 466 U.S. at 616-17. Likewise, *Illinois Council* concluded that § 405(h) "demands the 'channeling' of virtually all legal attacks through the agency, assur[ing] the agency greater opportunity to apply, interpret or review policies, regulations, or statutes without possibly premature interference by different individual courts[.]" *Ill. Council*, 529 U.S. at 13.

Citing *Ringer* and its progeny, the Seventh Circuit held recently that it is "airtight" that mandamus cannot be used to circumvent exhaustion. *Ctr. for Dermatology*, 770 F.3d at 590. In *Center for Dermatology*, the court rejected a mandamus theory based on a Medicare contractor's alleged failure to follow a regulation regarding the timely processing of "clean claims" for Medicare reimbursement. *Id*. at 590-91. The Seventh Circuit concluded that the regulatory time

6

limit did not apply to processing plaintiff's claims; his claims were not considered "clean" because they were under pre-payment review based on suspicions of Medicare fraud. *Id.* The payment suspension here is analogous because it imposed a fixed temporary delay on reimbursements for any Medicare claims that were found to be valid after review. If the indefinite delay in *Center for Dermatology* could not be controlled by mandamus, the temporary suspension here likewise is not subject to mandamus.

After giving short shrift to *Ringer*, *Illinois Council*, and *Center for Dermatology*, MedPro turns, inappositely, to two old district court cases, *Hennings v. Heckler*, 601 F. Supp. 919 (N.D. Ill. 1985) and *Burnett v. Heckler*, 625 F. Supp. 831 (C.D. Ill. 1986), *reversed by Burnett v. Bowen*, 830 F.2d 731 (7th Cir. 1987). MedPro Resp. at 4. Neither decision helps MedPro. In both *Hennings* and *Burnett*, the plaintiffs wanted to reopen the administrative process with respect to their claims for Social Security benefits; they were not trying to avoid administrative review. Moreover, while the Seventh Circuit allowed a mandamus action to proceed in *Burnett*, it did so without a detailed consideration of the history of § 405(h). *Id.*, 830 F.2d at 737-38. Even more significantly, the *Burnett* court recognized that the claimant *did* exhaust administrative remedies under § 405(g) before attempting to proceed with its mandamus claim. *Burnett*, 830 F.2d at 739. In addition, while *Burnett* suggested that mandamus may be available for claims that are procedural rather than substantive, the Seventh Circuit's most recent decision in *Center for Dermatology* sharply qualifies *Burnett*. The court held "that the exhaustion requirement is still applicable to procedural challenges" and noted that mandamus was available to Burnett only because he had pursued all of his possible administrative appeals. *Ctr. for Dermatology*, 770 F.3d at 590. Neither *Hennings* nor *Burnett* supports MedPro's theory that it should be able to seek mandamus relief in this court without exhausting its administrative remedies.

7

MedPro also urges this court to follow five other decisions from the 1980s. MedPro Resp. at 9. The Supreme Court vacated and remanded two of them. *See Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984), *vacated and remanded by Heckler v. Lopez*, 469 U.S. 1082 (1984); *Kuehner v. Schweiker*, 717 F.2d 813 (3d Cir. 1983), *vacated and remanded by Heckler v. Kuehner*, 469 U.S. 977 (1984). Three other decisions — *Dietsch v. Schweiker*, 700 F.2d 865 (2d Cir. 1983); *Belles v. Schweiker*, 720 F.2d 509 (8th Cir. 1983), and *Ellis v. Blum*, 643 F.2d 68 (2d Cir. 1981) — are easily distinguishable. Importantly, all three cases are pre-*Ringer* and pre-*Illinois Council*. Further, the claimants in each of those cases wanted to proceed with or receive *more* administrative process (*i.e.*, review by the Medicare Appeals Council in *Dietsch*, a pre-recoupment hearing in *Belles*, and a more detailed pre-termination notice in *Ellis*); they were not trying to *evade* administrative review like MedPro.

MedPro's tort claim — that AdvanceMed deliberately and "fraudulently" failed to review the additional rebuttal documentation — fares no better than its mandamus claim. MedPro attempts unsuccessfully to distinguish the Seventh Circuit's on-point decision in *Bodimetric*. MedPro Resp. at 11. Similar allegations of systemic and illegal claims processing were made in *Bodimetric*, but the Seventh Circuit nonetheless required exhaustion because the claims were inextricably intertwined with Medicare. *Bodimetric*, 903 F.2d at 489-90. *See also*, *Midland Psychiatric Assoc. v. United States*, 145 F.3d 1000, 1005 (8th Cir. 1998) (claims under the Federal Tort Claims Act could not proceed under § 405(g) because they were intertwined with Medicare). Although couched as fraud, MedPro's claim is really that AdvanceMed did not follow the regulation requiring it to consider the rebuttal statement and pertinent evidence — such a claim arises under Medicare. The remedy is the usual § 405(g) exhaustion remedy, and not a tort/fraud

8

claim. Section 405(h) mandates this result by barring jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). *See Bodimetric*, 903 F.2d at 483; *Midland*, 145 F.3d at 1005.

Although MedPro asserts that "official immunity" should not apply to insulate AdvanceMed from its fraud claim (MedPro Resp. at 11), a tort remedy is not available here because the Federal Tort Claims Act does not waive sovereign immunity for tort claims based on intentional or negligent misrepresentations. 28 U.S.C. § 2680(h). Moreover, a tort claim for damages also should not be available given the comprehensive nature of the remedy provided by § 405(g). *See Schweiker v. Chilicky,* 487 U.S. 412 (1988) (relying upon § 405(g) to bar damages claim under *Bivens* theory); *Pines Res. Treatment Ctr. v. U.S.*, 444 F.3d 1379, 1380-81 (Fed. Cir. 2006) (comprehensive remedy under § 405(g) is exclusive and precludes Tucker Act remedy). Finally, the FTCA has its own exhaustion requirements, and there is no suggestion that MedPro submitted or exhausted an FTCA claim for a sum certain. *See* 28 U.S.C. § 2675, 28 C.F.R. § 14.1-14.11. For all of these reasons, both MedPro's mandamus and fraud claims should be dismissed for lack of jurisdiction.

**C. MedPro Does Not Satisfy the Conditions for a Waiver of Exhaustion Requirements.**

To the extent MedPro is asking that exhaustion requirements be waived (MedPro Resp. at 5, 9), its request should be rejected. All claims arising under the Social Security Act must first be presented to the agency and channeled through four levels of administrative review. 42 U.S.C. §§ 1395ff, 1395ii (incorporating 42 U.S.C. §§ 405(g), (h)), 42 C.F.R. §§ 405.904, 405.906; *Ill. Council*, 529 U.S. at 13. The presentment requirement is jurisdictional and not subject to waiver. *Mathews v. Eldridge*, 424 U.S. 319, 329 (1976); 42 U.S.C. § 1395(b)(1)(A), (D). The exhaustion requirement is also jurisdictional, but is subject to waiver if three conditions are met: (1) the claim is completely collateral to a claim for benefits, (2) irreparable harm would result from delayed

9

review, and (3) exhaustion would be futile. *Ill. Council*, 529 U.S. at 13, 24, citing *Eldridge*, 424 U.S. at 330-31; *Salfi*, 422 U.S. at 763-65. Failure to satisfy even one of these three factors dooms a waiver request. *Clarinda Home Health*, 100 F.3d at 531.

MedPro does not meet any of the three conditions for waiver. First, as discussed above in section I.A., MedPro's pending administrative challenge to the overpayment determination is "inextricably intertwined" with and is not "wholly collateral to" its procedural challenge regarding the allegedly erroneous review of suspension rebuttal material. *Ringer*, 466 U.S. at 614, 618; *Ancillary Affiliated Health Servs., Inc. v. Shalala*, 165 F.3d 1069, 1071 (7th Cir. 1998) ("We fail to see how Ancillary's claim, which is premised on [reimbursement] monies allegedly due under the Medicare Act and relies on administrative regulations pertaining to Medicare, is wholly collateral to the Medicare Act."). *See also*, *Integrated*, 2017 WL 1373265, at 4 (challenge to Medicare contractor's review of suspension rebuttal materials is "precisely the same" as a claim for benefits).

Second, MedPro does not attempt to make a showing that irreparable harm would result from delayed review, and merely asserts — without support — that its business has suffered and/or closed because of the (now lifted) payment suspension. MedPro Resp. at 14. Such unsupported allegations do not support a waiver. *Compare Ivanchenko v. Burwell*, No. 16 C 9056, 2016 WL 6995570 (N.D. Ill. 2016) (court dismisses mandamus claim involving a Medicare overpayment that had not proceeded through all levels of administrative review, notwithstanding plaintiff's allegations of financial harm including possible closure of its business).

More importantly, the Supreme Court has recognized that the ability to recover denied benefits (here, reimbursements) through the administrative process is an adequate legal remedy. *Ringer*, 466 U.S. at 618 (incorrect denial of payment in "the early stages of the administrative

10

process" can "be remedied by the later payment of benefits"). Any "individual hardship resulting from delays in the administrative process" may not override Congress's decision to require exhaustion. *Id.* at 627. The Seventh Circuit has also specifically held that notwithstanding even "severe" financial impact, judicial review after exhaustion of administrative remedies is a legally adequate remedy, and the inability of a provider to operate at full capacity is legally insignificant. *Northlake Comm. Hosp. v. U.S.*, 654 F.2d 1234, 1242 (7th Cir. 1981); *accord, Northwest Healthcare, LP v. Sullivan,* 793 F. Supp. 724, 728-29 (W.D. Tex. 1992) (denying injunction and holding that review under § 405(g) constitutes "an adequate remedy at law[.]").[3]

Third, exhaustion is not futile. MedPro will receive a hearing on the claims it chooses to raise, the agency will have the opportunity to correct any errors, and the parties will develop a record for judicial review. *Salfi*, 422 U.S. at 765. Even if MedPro's complaint about the suspension rebuttal process is somehow viewed as distinct from the overpayment determination and is not subject to administrative relief, "*Ringer* and *Illinois Council* make clear that the fact that an agency's administrative review, by itself, might not afford the relief claimed, does not excuse the jurisdictional requirements of presentment and exhaustion." *Lifestar Ambulance Serv.*, *Inc. v. Thompson*, 365 F.3d 1293, 1298 (11th Cir. 2004). *See also*, *Martin v. Shalala*, 63 F.3d 497, 505 (7th Cir. 1995) (unavailability of Medicare provider's preferred relief does not render administrative exhaustion futile).

---

[3] Participation in Medicare is also voluntary and providers who choose to depend on Medicare do so at their own risk. For these reasons, "even if the Secretary's actions were to force a health care provider out of business, the injuries are not necessarily irreparable, considering the risk known to the health care provider when it enters the Medicare program." *Manakee Prof'l Med. Trans. Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995) (quotation and citation omitted); *see also Physician Hosps. of America v. Sebelius,* 691 F.3d 649, 657-658 (5th Cir. 2012) (even extraordinary expenses and great hardship do not excuse exhaustion).

Because none of the three conditions for a waiver are met, MedPro must proceed through the administrative process. This court must dismiss the complaint to allow MedPro to exhaust its administrative remedies.

## II. MedPro Fails to Identify a Non-Discretionary Duty.

Even if MedPro could proceed in the absence of administrative exhaustion, its mandamus claim fails because MedPro cannot identify the breach of a non-discretionary duty owed to it, which is a prerequisite for mandamus relief. *Ringer*, 466 U.S. at 616. The regulation upon which MedPro relies requires only that, when determining if a payment suspension should continue, the agency or its contractor "consider" the suspension rebuttal statement and any "pertinent" evidence submitted with it. 42 C.F.R. § 405.375(a). The regulation does not define the term "pertinent" and leaves it to the contractor to determine what evidence is pertinent. *Id.* Because the duties to determine whether a suspension should continue and to consider pertinent evidence submitted with a rebuttal statement are discretionary ones, they are not subject to mandamus. *Id. See Your Home*, 525 U.S. at 456-57 (petitioner not entitled to mandamus relief because Secretary had no "clear nondiscretionary duty" to reopen reimbursement determinations; reopening regulations were permissive); *Ringer*, 466 U.S. at 617 (dismissal of mandamus claim affirmed where Secretary's decision regarding whether medical services are "reasonable and necessary" is "clearly discretionary"); *Integrated*, 2017 WL 1373265, at 3 (regulatory duty to review rebuttal materials in connection with Medicare payment suspension is discretionary and cannot support mandamus jurisdiction); *Long Island Ambulance, Inc. v. Thompson*, 220 F. Supp.2d 150, 164 (E.D. N.Y. 2002) (contractor decisions surrounding a payment suspension are discretionary). MedPro cannot point to a non-discretionary duty relating to AdvanceMed's decision to continue the payment suspension, including with respect to the consideration of the suspension rebuttal.

MedPro concedes that AdvanceMed considered its rebuttal statement. Dkt. 1 at ¶¶ 25-33; Dkt. 1, Att. 2. The gravamen of MedPro's complaint is that AdvanceMed allegedly failed to consider "pertinent evidence" submitted with the rebuttal statement, *i.e.*, three boxes of "new and

13

original" medical records. *Id.*; MedPro Resp. at 2, 13. MedPro tries to impose a nondiscretionary duty on AdvanceMed to consider such additional documentation where no such duty exists. Again, per the regulations at 42 C.F.R. §§ 405.372 and 405.375, the duty to consider pertinent evidence submitted with a rebuttal statement is a discretionary one. *Integrated*, 2017 WL 1373265, at 3. Contrary to MedPro's representation that the contractor in *Integrated* reviewed additional medical records and deemed them irrelevant (MedPro Resp. at 8), the contractor actually admitted that it did not review the records submitted with the rebuttal statement, because it "doubted the accuracy of the records" based on an indictment for Medicare fraud. *Integrated*, 2017 WL 1373265, at 3. This decision was within the contractor's regulatory discretion. *Id*. Because it cannot identify a nondiscretionary duty, MedPro's mandamus claim cannot proceed.

### III.     MedPro Fails to Properly Plead Fraud or Any Claim Against NCI.

As discussed in the opening brief, in addition to the lack of subject matter jurisdiction, MedPro's fraud claim is subject to dismissal for pleading defects under Fed. R. Civ. P. 12(b)(6) and (9)(b). MedPro responds only that "notice pleading" principles should apply and ignores the special pleading requirements for fraud. MedPro Resp. at 13. MedPro then asks that the court allow it leave to amend its fraud claim, MedPro Resp. at 15, but because amendment cannot cure the jurisdictional defects in this case, amendment would be futile, and leave to amend should be denied. Fed. R. Civ. P. 15; *Glick v. Koenig,* 766 F.2d 265, 268–69 (7th Cir. 1985) ("The liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures.").

Additionally, MedPro fails to identify any reason to keep defendant NCI in this case. NCI is not a Medicare contractor and is merely AdvanceMed's parent company. *See* HHS Mem. at 1, n. 1. MedPro's response does not even mention NCI. Accordingly, NCI should be dismissed, along with the Secretary and AdvanceMed.

## Conclusion

For all of the foregoing reasons, MedPro's complaint should be dismissed in its entirety.

Of Counsel:

JEFFREY S. DAVIS
Acting General Counsel

ALAN S. DORN
Chief Counsel, Region V

LUCY C. LISIECKI
Assistant Regional Counsel
Office of General Counsel
United States Department of Health and
Human Services, Region V
233 North Michigan Avenue, Suite 700
Chicago, Illinois 60601

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: s/ Kathryn A. Kelly
    KATHRYN A. KELLY
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1936
    Kathryn.Kelly@usdoj.gov