**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MEDPRO HEALTH PROVIDERS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 17 C 1568** |
| ) | |
| **ERIC HARGAN, Acting Secretary, U.S.** ) | |
| **Department of Health and Human Services,** ) | |
| **ADVANCEMED CORPORATION, and** ) | |
| **NCI INFORMATION SYSTEMS, Inc.,** ) | |
| **d/b/a ADVANCEMED,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

MedPro Health Providers, a home healthcare agency, has filed suit against the

Secretary of the U.S. Department of Health and Human Services (HHS),[1] AdvanceMed

Corporation, and NCI Information Systems, Inc. in connection with alleged violations of

the Medicare Act and its implementing regulations. In addition to bringing a fraud claim

against AdvanceMed on behalf of itself and a proposed class of similarly situated

healthcare providers, MedPro also seeks a writ of mandamus directing the Secretary to

require compliance with the applicable regulations. Defendants have moved to dismiss

MedPro's claims for lack of subject-matter jurisdiction. Defendants also have moved to

dismiss NCI on the ground that it is not a proper defendant. For the reasons stated

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Eric Hargan, the acting Secretary of
Health and Human Services, is substituted as defendant for former Secretary Thomas
Price.

below, the Court grants defendants' motion to dismiss for lack of subject-matter jurisdiction.

## Background

### 1.    Regulatory background

The Secretary of HHS has delegated the responsibility of administering the Medicare program to the Centers for Medicare & Medicaid Services (CMS).  CMS, in turn, contracts with private entities to administer various aspects of the program. AdvanceMed is one such contractor.  As a Zone Program Integrity Contractor (ZPIC) for CMS, AdvanceMed is tasked with identifying suspected cases of Medicare fraud and otherwise preventing the mistaken overpayment of Medicare funds to healthcare providers.

CMS and its contractors have the authority to temporarily suspend Medicare reimbursement payments to a provider if they "possess[ ] reliable information that an overpayment exists," even if additional information is needed for a final determination. 42 C.F.R. § 405.371(a)(1).  Generally, the suspension may last no more than 180 days. *Id.* § 405.372(d)(1).  A provider must be given an opportunity to submit a rebuttal statement explaining why the suspension should be lifted.  *Id.* § 405.372(b)(2).  If the provider submits a statement, "CMS, the intermediary, or carrier must within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case" to determine whether the facts justify terminating the suspension.  *Id.* § 405.375(a).  The Medicare Program Integrity Manual further provides that "ZPICs shall carefully review the provider's rebuttal statement and pertinent information, and shall consider all facts

2

and issues raised by the provider."  Medicare Program Integrity Manual § 8.3.2.2.5.

The written notice of a determination to continue a suspension must contain "specific

findings on the conditions upon which the suspension is . . . continued . . . and an

explanatory statement of the determination."  42 C.F.R. § 405.375(b)(2).  Such

determinations are not appealable.  *Id.* § 405.375(c).  A suspension is rescinded as

soon as CMS or its contractor determines whether the suspected overpayment exists.

*Id.* § 405.372(c)(1)(ii).  The suspended Medicare payments are then released to the

provider, less the amount of any overpayment found.  *Id.* § 405.372(e)

      Although suspension determinations are not appealable, providers are entitled to

appeal any subsequent overpayment determination through a four-part administrative

process that culminates in a decision by the Medicare Appeals Council.  *See id.* §

405.904(a)(2).  The Appeals Council's decision is final and thus subject to judicial

review in federal district court.  42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A), 1395ii; 42

C.F.R. § 405.1130.

## 2.    The lawsuit

      The Court takes the following factual allegations from MedPro's complaint and

the exhibits attached to the complaint.  MedPro is an Illinois home healthcare company

that is authorized to provide services to Medicare beneficiaries.  AdvanceMed, acting in

its capacity as a Medicare contractor, conducted a review of 32 of MedPro's patient

charts in March 2016.  In November 2016, AdvanceMed notified MedPro that it was

suspending Medicare payments to the company "based on reliable information that an

overpayment exists or that the payments to be made may not be correct."  Compl. ¶ 22.

Specifically, AdvanceMed stated that a review of the records provided by MedPro in

March revealed evidence that the company was "billing Medicare for services that were not medically reasonable or necessary and where the required face-to-face encounters and physician recertification were invalid." Compl., Ex. 1 at 1. The notice of suspension stated that if MedPro submitted a written rebuttal statement addressing why the suspension should be removed, CMS would "review that statement (and any supporting documentation), along with other materials associated with the case." *Id.* at 1-2.

On December 6, 2016, MedPro submitted a rebuttal statement and "substantial supporting documentation," which included "3 banker's boxes" of additional medical documentation and an affidavit from a primary care physician. Compl. ¶¶ 24-25. On December 28, 2016, AdvanceMed informed MedPro that, after reviewing the rebuttal statement and supporting documentation, CMS had decided to continue the suspension of payment. MedPro's chief executive officer, Rizaldy Villasenor, discussed the suspension with L. McGee, an AdvanceMed program integrity analyst, and Kathlene Gruettner, a supervisor at AdvanceMed, via conference call in early January 2017. During this call, Villasenor asked Gruettner why AdvanceMed's December 2016 response to the rebuttal statement did not address the supporting documentation submitted along with it. Gruettner responded that it is AdvanceMed's policy not to review additional documentation like the medical records submitted with MedPro's rebuttal statement. She stated that AdvanceMed was not obligated to review the additional documentation and that it never does so. Gruettner further stated that CMS did not want AdvanceMed to review additional documentation submitted by service providers.

MedPro filed the present lawsuit against the Secretary, AdvanceMed, and NCI

Information Systems in February 2017.  MedPro alleges that the Secretary's refusal

(through AdvanceMed) to review the additional documentation submitted with MedPro's

rebuttal statement constitutes a failure to carry out the duties prescribed by 42 C.F.R. §

405.375(a) and section 8.3.2.2.5 of the Medicare Program Integrity Manual.  MedPro

further alleges that the Secretary's failure to ensure the enforcement of these

regulations has deprived MedPro of its right of review.  Accordingly, MedPro seeks a

writ of mandamus requiring the Secretary to order an immediate review of its rebuttal

statement and the documents submitted along with it.  MedPro also alleges that

AdvanceMed committed fraud by making false representations to MedPro and similarly

situated providers that AdvanceMed would (and did) review supporting documentation

submitted with a rebuttal statement in accordance with the applicable regulations.

**3.    Subsequent events**

AdvanceMed terminated MedPro's payment suspension on April 26, 2017, while

this lawsuit was pending.  *See* Mot. to Dismiss, Ex. 2.  On the same day, AdvanceMed

notified MedPro that it had found MedPro had been overpaid by Medicare in the amount

of $6,937,712.00, based on an extrapolation of overpayments found in a statistically

valid sample of claims and medical records.  *Id.*, Ex. 4 at 3.  MedPro signaled its

intention to appeal the overpayment determination in its June 2017 response to the

present motion to dismiss.  *See* Pl.'s Resp. at 6, n.3.

**Discussion**

On a motion to dismiss, a court accepts as true the well-pleaded factual

allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff.

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

Nonetheless, in the context of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdictional requirements are met. *Id.* at 588-89.

Defendants argue that the Court lacks subject-matter jurisdiction over MedPro's mandamus and fraud claims due to MedPro's failure to exhaust the administrative remedies provided by the Medicare Act. In addition to noting that MedPro's temporary payment suspension has been terminated since the initiation of this suit, defendants assert that the mandamus claim fails because MedPro cannot establish that the Secretary had a clear, nondiscretionary duty to review additional documentation submitted with a rebuttal statement in the context of a temporary payment suspension. Defendants further argue that MedPro's fraud claim fails to satisfy the pleading requirements set out in Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

### 1. The mandamus claim

Pursuant to 28 U.S.C. § 1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus is an "extraordinary remedy." *Ctr. for Dermatology*, 770 F.3d at 591. As the Supreme Court explained in *Heckler v. Ringer*, 466 U.S. 602, 616 (1984), it "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." If this threshold is met, a court may issue a writ if (1) the plaintiff has a clear right to the relief sought; (2) the defendant owes a "plainly defined and peremptory duty" to do the act in question; and (3) no other adequate remedy is available. *Ctr. for Dermatology*, 770 F.3d at 589.

6

In its February 2017 complaint, MedPro sought a writ of mandamus to compel

the Secretary to order an immediate review of its rebuttal statement and the additional

documentation submitted along with the statement. MedPro concedes that the

temporary payment suspension was terminated in April 2017 in connection with

AdvanceMed's overpayment finding, but it still contends that mandamus is appropriate.

Although the mandamus request is arguably moot now that the suspension has been

lifted, defendants make no more than a passing reference to mootness, and only in their

reply, even though the argument was equally available when they filed their motion.

*See* Defs.' Reply at 5. Instead, defendants argue that the Court lacks jurisdiction over

MedPro's mandamus claim because MedPro has not exhausted its claim by channeling

it through the administrative process for contesting the overpayment determination that

arose from the suspension.

The Medicare Act provides for federal judicial review of any final decision of the

Secretary that is made after a hearing. 42 U.S.C. § 405(g); *see also id.* §

1395ff(b)(1)(A) (incorporating § 405(g)). Section 405(h), which is incorporated into the

Act by 42 U.S.C. § 1395ii, further provides that "[n]o action against the United States,

[the Secretary], or any officer or employee thereof shall be brought under 1331 or 1346

of Title 28 to recover on any claim arising under this subchapter." *Id.* § 405(h).

In *Ringer*, the Supreme Court explained that, when read together with section

405(g), section 405(h) requires the exhaustion of administrative remedies prior to

judicial review of any claim arising under the Medicare Act. *Ringer*, 466 U.S. at 627.

The term "arising under" is read broadly; claims that are not "wholly collateral" to a claim

for benefits under the Medicare Act but instead are "inextricably intertwined" with a

benefits determination are subject to this exhaustion requirement. *Id.* at 614-18; *see also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 483-84 (7th Cir. 1990) (describing the holding of *Ringer*). Consequently, section 405(h) "demands the 'channeling' of virtually all legal attacks through the agency, [which] assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000); *see also Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 441 (7th Cir. 2005) ("[A] provider must channel virtually all legal attacks through the Medicare program's administrative review process before it may seek judicial review.").

The Supreme Court has not decided whether section 405(h) forecloses mandamus jurisdiction in Medicare Act cases. *See Ringer*, 466 U.S. at 616. Nonetheless, a plaintiff must have "exhausted all other avenues of relief" before he is entitled to a writ of mandamus. *Id.*; *see also Michael Reese Hosp.*, 427 F.3d at 443 ("[E]xhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under both the federal question and mandamus theories . . . ."). In *Illinois Council*, the Supreme Court recognized a limited exception to the exhaustion requirement where application of section 405(h) would entirely preclude review of a claim, instead of merely channeling review through the agency. *Illinois Council*, 529 U.S. at 19. The exhaustion requirement also may be waived if (1) the claim is collateral to a claim of benefits; (2) exhaustion of the administrative process would be futile; and (3) the plaintiff would suffer irreparable harm "if required to move through the administrative procedure before obtaining relief." *Martin v. Shalala*, 63 F.3d 497, 504 (1995).

MedPro disputes defendants' contention that it may raise the issue of the AdvanceMed's alleged violation of the Medicare Act regulations through the administrative process made available for contesting the ultimate overpayment determination and also in federal court after the Secretary has issued a final decision. MedPro argues that an appeal of the overpayment determination will afford it no relief on this matter, which MedPro characterizes as an unreviewable procedural issue that is entirely unrelated to the overpayment issue or to the merits of any claim for benefits under the Medicare Act.

It is far from clear that MedPro can obtain no relief from the overpayment administrative appeals process. Although MedPro did not have the right to appeal AdvanceMed's interim decision to continue the suspension while the overpayment investigation was underway, nothing prevents it from raising in its challenge to the ultimate overpayment determination the issue of AdvanceMed's failure to consider the evidence it submitted in response to the temporary suspension. It is reasonable to believe that if the agency determined during the appeal process that AdvanceMed violated applicable regulations by refusing to consider pertinent documentation submitted with MedPro's rebuttal statement, the agency could order a review of that additional information, and adjust the overpayment determination if warranted. *Cf. PrimeSource Healthcare of Ohio, Inc. v. Sebelius*, No. 14 C 392, 2014 WL 3368194, at *5 (N.D. Ill. July 9, 2014) (rejecting provider's claim that administrative process would provide no relief from allegedly illegitimate prepayment screen because the issue could be raised as part of administrative challenge to the denial of individual Medicare claims). The Court concludes that MedPro has failed to exhaust available avenues of relief as is

required by *Ringer*.

In addition to asserting that the administrative process available for contesting overpayments would provide it no relief, MedPro also argues that it could not have availed itself of that process at the time it filed the complaint, because an overpayment determination had not yet been made. As the Supreme Court explained in *Illinois Council*, however, the fact that the agency might not provide a hearing for a particular contention "is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency," and the court can consider the specific contention at issue "[a]fter the action has been so channeled." *Illinois Council*, 529 U.S. at 23.

The delay in review—and the resulting hardship—caused by requiring MedPro to wait for an overpayment determination so it can raise and exhaust its claims before the agency is unfortunate, but this does not, without more, warrant a waiver of the exhaustion requirement. The Court will not upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency. *See Ringer*, 466 U.S. at 627 ("Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year."). The Court is unconvinced that exhaustion of the available administrative process would be futile. *See, e.g.*, *Martin*, 63 F.3d at 505 (exhaustion not futile where provider could obtain review of a contested locality designation within the context of a disputed claim for benefits even there if was no process for obtaining the provider's desired form of relief). As the Seventh Circuit

explained in *Michael Reese Hospital*, "[t]he exhaustion requirement serves an important purpose, preventing the premature interference with agency processes so that the agency can function efficiently and can correct its own errors." *Michael Reese Hosp.*, 427 F.3d at 441. The Court concludes that it lacks subject-matter jurisdiction over the mandamus claim due to MedPro's failure to exhaust administrative remedies.

**2.     The fraud claim**

MedPro also alleges that AdvanceMed committed fraud by falsely representing that it would (and did) follow the applicable regulations requiring it to review supporting documentation submitted with MedPro's rebuttal statement in determining whether to terminate the temporary suspension. MedPro contends that this Court has jurisdiction over this claim "pursuant to the Medicare Act and all applicable rules and regulations." Compl. ¶ 16.

Defendants argue that MedPro's fraud claim does not satisfy the pleading requirements set forth in Federal Rules of Civil Procedure 9(b) and 12(b)(6), for three reasons. First, defendants argue that MedPro's fraud claim fails because the complaint does not allege that AdvanceMed engaged in a scheme to defraud by making a false statement of intent about future conduct. Defendants also assert that MedPro alleges no connection between its damages and AdvanceMed's alleged failure to completely review the rebuttal and attached documentation. Lastly, defendants assert that MedPro has pleaded itself out of court by attaching, as exhibits to the complaint, letters from AdvanceMed that establish it did not commit fraud.

To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege the following:

> (1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

*Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012).  Rule 9(b) requires a party to allege with particularity the circumstances constituting fraud.  *Id.*  With respect to promissory fraud, that is, a "false statement of intent regarding future conduct," a plaintiff must allege a "scheme to defraud," which requires an allegation that, "at the time the promise was made, the defendant did not intend to fulfill it."  *Id.* at 570.

The notice of suspension MedPro received from AdvanceMed stated that CMS would review MedPro's rebuttal statement "and any supporting documentation" addressing why the suspension should be removed.  Compl. ¶ 55.  AdvanceMed's response to MedPro's rebuttal stated that CMS decided to continue the suspension after reviewing the rebuttal statement and supporting documentation.  MedPro alleges that those statements were false because AdvanceMed later stated that, as a matter of policy, it did not review supporting documentation submitted with a rebuttal statement.  MedPro further alleges that AdvanceMed was aware of its obligation under the Medicare Act to review the rebuttal statement and supporting documentation and that its refusal to review the supporting documents violated that obligation.  MedPro says it "expended significant resources and financial capital" in preparing its rebuttal and supporting documentation, in reliance on AdvanceMed's representation that it would review those materials.  *Id.* ¶ 57.  MedPro also alleges that its reliance on AdvanceMed's representation resulted in the continuation of the suspension and that the withholding of more than $300,000 in payments (at the time the complaint was filed) caused MedPro significant financial hardship.  *Id.* ¶ 65.  It alleges that if it had known

the additional documentation would not be reviewed, it "could have taken timely and additional steps to avoid further damages." *Id.* ¶ 64.

MedPro has sufficiently alleged a false statement of intent regarding future conduct. According to the complaint, AdvanceMed stated that it "never" reviews additional documentation submitted with a rebuttal statement. *Id.* ¶ 32. If that is true, then the statement in the notice of suspension that it *would* review such documentation was a false statement of intent. MedPro also has sufficiently alleged a connection between AdvanceMed's representation that it would review the documentation and MedPro's damages, specifically that it expended significant resources in preparing its rebuttal and additional documentation and that AdvanceMed's refusal to review the documentation resulted in the continuation of the suspension. Lastly, AdvanceMed's letters explaining that the suspension was based on its review of records previously submitted by MedPro do not demonstrably refute the allegation of fraud. Accordingly, the Court concludes that MedPro has met the pleading requirements for fraud.

Defendants also contend, however, that MedPro's failure to exhaust administrative remedies under the Medicare Act precludes the Court from exercising jurisdiction over the fraud claim. Defendants say that MedPro's fraud claim effectively arises under the Medicare Act because it is, at its core, a claim that AdvanceMed violated the Medicare regulation regarding consideration of MedPro's evidence. Defendants argue that such a claim must be channeled through the administrative review process that is available for challenging final overpayment determinations.

In *Bodimetric*, the Seventh Circuit affirmed the district court's dismissal, for lack of subject-matter jurisdiction, of state law fraud and wrongful misconduct claims brought

by a number of providers against a Medicare contractor. *Bodimetric*, 903 F.2d at 481-82. The providers sought damages arising from the contractor's allegedly improper denials of their claims for reimbursement under the Medicare Act. *Id.* at 482-83. The Seventh Circuit found that, despite being styled as state law claims, the claims arose under the Medicare Act because they were, "at bottom, a challenge to [the contractor's] approach to processing claims," and, as such, were subject to the administrative review requirements set forth in the Act. *Id.* at 486-87.

Other courts also have dismissed unexhausted claims of fraud for lack of subject-matter jurisdiction based on a finding that such claims do, in fact, "arise under" the Medicare Act and are thus subject to its stringent jurisdictional requirements for federal review. In *Integrated Nursing & Health Services, Inc. v. CMS*, No. CV 17-683 (DWF/KMM), 2017 WL 1373265, at *4 (D. Minn. Apr. 13, 2017), the court dismissed a very similar fraud claim against CMS because the plaintiff provider had not exhausted administrative remedies. The provider claimed it was defrauded by CMS when it said it would review rebuttal documentation related to a temporary suspension but then refused to do so because it believed it had reason to question the accuracy of the documentation. *Id.* at *1-2. Because the provider sought damages in the amount of the suspended payments, the court found that the fraud claim was just a "repackaged" claim for Medicare reimbursements. *Id.* at *4. Noting that the decision to suspend Medicare payments was not a final determination and that the provider would have an opportunity to contest any overpayment determination through the administrative process, the court found that the provider had not exhausted its administrative remedies. *Id.* The court concluded that the fraud claim was not collateral to the claim

for benefits and that it lacked subject-matter jurisdiction over the claim due to the failure to exhaust. *Id.*

Similarly, in *MJG Management Associates, Inc. v. NHIC Corp.*, No. CIV.A. 12-11414-FDS, 2013 WL 1946220 (D. Mass. May 9, 2013), the court held that it lacked subject-matter jurisdiction over a provider's claim that a Medicare contractor's suspension of payments was fraudulent and violated Medicare regulations because the provider did not fulfill the exhaustion requirement. The court held that the provider's claim arose under the Medicare Act and that this was "exactly the type [of action] that Congress intended to channel through the agency's administrative process." *Id.* at *4. The court declined to waive the exhaustion requirement, finding that the provider's claim was not wholly collateral to its claim for benefits. *Id.*

Like the fraud claims in *Bodimetric*, *Integrated Nursing*, and *MJG Management*, MedPro's fraud claim is bound up with a claim for benefits under the Act, its claim involving the temporary suspension, and a challenge to the ultimate overpayment determination, all of which are the types of claims that must be addressed through the prescribed administrative review process. There is no real way to isolate the fraud claim from other claims that plainly require exhaustion. More specifically, the temporary suspension resulted from AdvanceMed's suspicion that MedPro was billing Medicare for services that were not medically reasonable or necessary, and MedPro's rebuttal statement—which it alleges AdvanceMed promised to but never intended to review—included a "thorough examination" of these same claims. The Court concludes that MedPro's fraud claim cannot be separated from its underlying claims for payment and that the claim therefore arises under the Medicare Act. As such, the fraud claim is

subject to the exhaustion requirement.  And the Court will not excuse exhaustion, because the fraud claim is not wholly collateral to its claim for benefits.  *See, e.g.*, *Ancillary Affiliated Health Servs., Inc. v. Shalala*, 165 F.3d 1069, 1071 (7th Cir. 1998) (no exception to exhaustion requirement where provider's claim not "wholly collateral" to claim for reimbursement under the Medicare Act).

### Conclusion

For the foregoing reasons, the Court grants the defendants' motion to dismiss and directs the Clerk to enter judgment dismissing the case for lack of subject-matter jurisdiction on the basis of failure to exhaust administrative remedies [dkt. no. 15].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 19, 2017